Clyde SIMMONS and Lloyd
Cole, Appellants,

v.

DIAMOND SHAMROCK CORPORA-
TION, a/k/a Diamond Shamrock
Chemicals Company, Appellee.

No. 87–1460.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 12, 1988.

Decided April 12, 1988.

Rehearing and Rehearing En Banc
Denied June 9, 1988.

David O. Danis, St. Louis, Mo., for appellants.

Brett A. Ringle, Stanley Weiner, John J. Marek, II, David H. Pace, Jones, Day, Reavis & Pogue, Dallas, Tex., Bradley S. Hiles and Richard J. Pautler, Peper, Martin, Jensen, Maichel and Hetlage, St. Louis, Mo., for appellee.

Before JOHN R. GIBSON, Circuit Judge, BRIGHT, Senior Circuit Judge, and MAGILL, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Plaintiffs, former employees of the Vitex American Division (Vitex) of Diamond Shamrock Chemicals Company (Diamond Shamrock) brought this class action to recover separation pay allegedly due upon Diamond Shamrock's sale of Vitex to Mallinckrodt, Inc. (Mallinckrodt) (plaintiffs will hereinafter be referred to as Employees). The district court below, 658 F.Supp. 1053, granted Diamond Shamrock's summary judgment motion finding: (1) that the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* (1982 & Supp. III 1985), governs the separation pay policy at issue; (2) that a prior state court judgment awarding two former Diamond Shamrock employees separation pay on state contractual grounds did not control this action; and (3) that Diamond Shamrock's interpretation of its separation pay plan was not arbitrary, capricious, or an abuse of discretion. For the reasons stated below, we affirm.

## I.  BACKGROUND

On February 21, 1981, Diamond Shamrock sold its Vitex division as a going concern to Mallinckrodt. On that date, plaintiff employees Lloyd Cole and Clyde Simmons ceased their employ with Diamond Shamrock and resumed work the next day as Mallinckrodt employees. The duties Cole and Simmons assumed at Mallinckrodt were identical to those they performed at Diamond Shamrock, and Mallinckrodt provided the same or greater rate of compensation.

Diamond Shamrock set forth its corporate personnel policies in a Personnel Policies and Procedures Manual which it maintained at each of its facilities, including the Vitex division.[1] Diamond Shamrock employees knew the Manual existed and had access to it. The separation pay policy contained in the Manual provided for payment of separation pay to those Diamond Shamrock employees who are separated from employment "due to lack of necessary competence" or "because of a permanent layoff due to lack of work."[2] The policy nowhere addresses a separation from work caused by the sale of a business division.

In October 1980, shortly before the sale of Vitex, Diamond Shamrock adopted a special policy for employees affected by divestiture (Divestiture Policy). The Divestiture Policy explicitly exempted from benefits those employees who, upon the sale of the division in which they worked, were offered a job with the purchasing company.[3]

---

1. Diamond Shamrock's corporate personnel policies applied to all salaried employees.

2. The separation pay policy reads, in pertinent part:

   Where separation from employment is due to a * * * *permanent layoff due to lack of work,* the employee will receive the following:

   \* \* \* \* \* \*

C. *For service in excess of one year*—One week's notice or one week's pay in lieu of notice for each year of employment with a minimum of two weeks' pay, plus vacation compensation earned and unused at the time of separation (emphasis added).

3. The policy is set forth in an interoffice memo entitled Policy Governing Salaried Employees Directly Affected by Divestiture. The policy did

Diamond Shamrock did not pay separation pay to those workers who ceased working for Diamond Shamrock on February 27, 1981 and immediately became Mallinckrodt employees. The company did, however, pay separation pay to those salaried employees who were not offered continued employment by Mallinckrodt and for whom other jobs with Diamond Shamrock were not available.

Two former Vitex division workers, not parties to this action, brought suit in Missouri state court asserting entitlement to separation pay following the sale of Vitex to Mallinckrodt. The Missouri Court of Appeals, viewing the policy as a binding contract between Diamond Shamrock and its employees, found in favor of those employees based on state law contract doctrines. *Gerson v. Diamond Shamrock Corp.*, 710 S.W.2d 368 (Mo.Ct.App.1986).

Plaintiffs Simmons and Cole initially filed this class action suit in the circuit court for St. Louis County, Missouri, basing their claim for separation pay on Missouri common law. Diamond Shamrock removed the case to the United States District Court for the Eastern District of Missouri on the grounds that the separation pay policy was an "employee welfare benefit plan" governed by ERISA, 29 U.S.C. § 1002(1). The district court agreed and thus considered Employees' state law claims as claims for separation benefits under ERISA pursuant to 29 U.S.C. § 1132.

Diamond Shamrock then filed a motion for summary judgment on the ground that its decision not to pay Employees separation pay was not arbitrary or capricious. Employees similarly moved for summary judgment, arguing that the *Gerson* decision had res judicata effect in this case. The district court denied Employees' and granted Diamond Shamrock's summary judgment motion. The district court found the *Gerson* decision inapplicable to the case at bar. It further held that Diamond Shamrock's interpretation of its separation pay policy was not arbitrary, capricious or

an abuse of discretion. This timely appeal followed.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is proper if there is no genuine issue of material fact and the moving party should prevail as a matter of law. Fed.R.Civ.P. 56(c). In reviewing a motion for summary judgment, we give the party opposing summary judgment "the benefit of all favorable factual inferences * * *." *Holloway v. Lockhart*, 813 F.2d 874, 878 (8th Cir.1987).

### B. The *Gerson* Decision

■ Employees argue first that, pursuant to the doctrines of res judicata and collateral estoppel, the Missouri state court's ruling in *Gerson* requires a judgment in their favor. We disagree.

28 U.S.C. § 1738 (1982) requires a federal court to give the same preclusive effect to a prior state court judgment as would the courts of the state from which the judgment emerged. *See Kremer v. Chemical Constr. Co.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982); *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1431 (8th Cir. 1986). Thus, we apply Missouri law in determining whether the *Gerson* decision precludes relitigation of Diamond Shamrock's obligations under the separation pay policy.

Under Missouri law, collateral estoppel applies only where the issue decided in the prior adjudication is identical to the issue presented in the present action. *Hudson v. Carr*, 668 S.W.2d 68, 70 (Mo.1984). "Collateral estoppel forecloses a party from litigating only *those exact issues* unambiguously decided in the earlier case." *Owens v. Government Employees Ins. Co.*, 643 S.W.2d 308, 310 (Mo.Ct.App.1982) (emphasis added) (quoting *Salsberry v. Archibald Plumbing and Heating Co.*, 587 S.W.2d 907, 915 (Mo.Ct.App.1979)).

---

not alter the amount of pay due employees not offered employment with the purchasing company, but specified, "[e]mployees who elect to

work for the new company, in the case of a sale, will not be eligible for this policy."

The *Gerson* court stated that "the seminal issue for decision" concerned "the meaning of the personnel policy," which the court interpreted in accord with Missouri contract law principles. *Gerson,* 710 S.W.2d at 369. The issue before the federal district court, on the other hand, was whether Diamond Shamrock's interpretation of its severance pay policy violated ERISA.

Collateral estoppel is further inapplicable where the party seeking its application bears a more difficult burden of proof than he/she bore in an earlier action. *See Shaffer v. Terrydale Management Corp.,* 648 S.W.2d 595, 608 (Mo.Ct.App.1983). The *Gerson* court construed the terms of the separation pay plan against the drafter, Diamond Shamrock, holding Diamond Shamrock to a fairly high standard regarding its obligations to its employees. *See Gerson,* 710 S.W.2d at 369. The district court, on the other hand, viewed Diamond Shamrock's actions through the considerably more deferential lens mandated by ERISA. The dissimilarity of the issues presented and standards employed by the federal district and Missouri courts defeat plaintiffs' assertion that collateral estoppel applies in this case.

Employees' invocation of res judicata is similarly without merit. Under principles of res judicata, a final judgment on the merits in a prior suit bars a later suit involving the same parties or their privies based on the same cause of action. *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Mid–Continent Broadcasting Co. v. Dresser Indus., Inc.,* 669 F.2d 564, 566 (8th Cir.1982). In Missouri, res judicata requires "(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality of the person for or against whom the claim is made." *Prentzler v. Schneider,* 411 S.W.2d 135, 138 (Mo.1966). The employees in the instant case were neither parties in the *Gerson* case, nor in privity with the *Gerson* plaintiffs. Thus, the district court correctly afforded the *Gerson* decision no preclusive effect.

■ The *Gerson* decision cannot bind this court for a third related reason. Diamond Shamrock's separation pay plan is governed by ERISA,[4] which preempts Employees' state court claims. *See Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed. 2d 728 (1985) ("the preemption provision was intended to displace all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements"); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983) (ERISA preempts state laws which have connection with or reference to an ERISA employee benefit plan); *Holland v. Burlington Indus., Inc.,* 772 F.2d 1140, 1146 (4th Cir. 1985), *aff'd sub nom. Brooks v. Burlington Indus., Inc.,* 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986); *Pabst Brewing Co. v. Anger,* 610 F.Supp. 214, 216 (D.Minn.1985), *aff'd,* 784 F.2d 338 (8th Cir. 1986). ERISA's preemptive effect extends to state decisional law, as well as to state statutes and regulations. *Jung v. FMC Corp.,* 755 F.2d 708, 714 (9th Cir.1985). Thus, the *Gerson* decision becomes irrelevant to the action before us.[5]

4. Courts have uniformly held that unfunded severance pay plans are an "employee welfare benefit plan" covered by ERISA. *See, e.g., Holland v. Burlington Indus., Inc.,* 772 F.2d 1140 (4th Cir.1985).

5. It appears clear that, under current law, ERISA might have governed the *Gerson* suit. However, we acknowledge that ERISA's total preemptive power was less clearly established when the *Gerson* plaintiffs initially filed in state court. Thus, we hold that the *Gerson* court's assumption of jurisdiction over those plaintiffs' contract claims was not a manifest abuse of authority. Accordingly, that judgment would be immune from collateral attack. *See* section 12 of the Restatement (Second) of Judgments which provides that when a court renders a final judgment that court's subject matter jurisdiction will not be relitigated unless (1) that court's assumption of jurisdiction constituted a manifest abuse of authority; or (2) the judgment substantially infringes the authority of another tribunal; or (3) the court lacked the capability to adequately determine its own jurisdiction. Restatement (Second) of Judgments § 12 (1982). However, notwithstanding the validity

## C. Arbitrary and Capricious Standard

■ Employees argue that the district court erred in applying the arbitrary and capricious standard and cite *Landro v. Glendenning Motor Ways, Inc.*, 625 F.2d 1344 (8th Cir.1980), in support. Appellants suggest that the arbitrary and capricious standard does not apply in a case such as the one before us inasmuch as a measure of discretion is not placed in the employer as to payment of benefits.

*Landro* approved the use of a two-step analysis by the district court—whether the plan was ambiguous and whether the administrator correctly construed the plan—in rejecting the plan administrator's decision. In *Landro,* the plan administrator's interpretation conflicted with both past practice and other extrinsic evidence illustrating the purposes underlying the plan. Thus, it was proved that the employer's interpretation in *Landro* thwarted the reasonable expectations of the employees and was properly overturned.

The analysis in *Landro* would not support the result sought by appellant for, as discussed above, the plan administrator's construction of the language of the plan is supported by the consistent practice of the employer. In any event, we are obliged to apply the arbitrary and capricious analysis in this case.[6] Moreover, the great majority of circuits give deference to a plan administrator's interpretation of its employee benefit plan, regardless of whether the plan language is ambiguous. *See DeGeare v. Alpha Portland Indus., Inc.*, 837 F.2d 812 (8th Cir.1988); *see, e.g., Adcock v. Firestone Tire & Rubber Co.*, 822 F.2d 623, 626 (6th Cir.1987); *Holt v. Winpisinger*, 811 F.2d 1532, 1535–36 (D.C.Cir.1987); *Anderson v. Ciba–Geigy Corp.*, 759 F.2d 1518, 1521 (11th Cir.), *cert. denied*, 474 U.S. 995, 106 S.Ct. 410, 88 L.Ed.2d 360 (1985).

We note that the Third Circuit, in an opinion by Judge Edward Becker, recently adopted a different approach in its review of plan administrator decisions. In *Bruch v. Firestone Tire & Rubber Co.*, 828 F.2d 134 (3d Cir.1987), that circuit refused to review a plan administrator's interpretation of its severance pay plan under the arbitrary and capricious standard where the administrator was also the employer whose interests in the plan were adverse to those of the employees. The court in *Firestone* located the origins of the arbitrary and capricious standard in the common law of trusts and discussed the incorporation of that standard in cases arising under the Labor Management Relations Act. *Firestone*, 828 F.2d at 140–41 (citing 29 U.S.C. § 141 (1982 & Supp. III 1985)).[7] As the court noted, however, the LMRA sets out elaborate requirements protecting the plans from control by a party biased toward either employees or employer. Further, the Act provides that "employees and employers [must be] equally represented in the administration of [the pension or welfare] fund." 29 U.S.C. § 186(c)(5)(B) (1982). LMRA's precautions assure the neutrality of a plan administrator and allow

---

of the Missouri Court of Appeal's judgment, we refuse to accord it preclusive effect. *See United States v. Ohio*, 487 F.2d 936, 943 (Temp.Emer. Ct.App.1973) (holding that "[t]he national scope of the [Economic Stabilization] Act, its underlying policy and the doctrine of federal preemption, should negate giving any res judicata effect to the State court judgment" contravening limits set by that Act), *aff'd sub nom. Fry v. United States*, 421 U.S. 542, 95 S.Ct. 1792, 44 L.Ed.2d 363 (1975); *see also Lorion v. United States Nuclear Regulatory Comm'n*, 712 F.2d 1472, 1479, n. * * (D.C.Cir.1983) ("interests in finality can operate to give res judicata effect to decisions resting on incorrect subject matter jurisdiction determinations").

**6.** We have applied the arbitrary and capricious standard in other ERISA cases. *See Quinn v.*

*Burlington N., Inc. Pension Plan*, 664 F.2d 675 (8th Cir.1981), *cert. denied*, 456 U.S. 928, 102 S.Ct. 1976, 72 L.Ed.2d 444 (1982); *Pabst Brewing Corp. v. Anger*, 784 F.2d 338 (8th Cir.1986).

**7.** The Third Circuit, citing one of its earlier decisions, explained "[section 302(c)(5) of the LMRA] imposes a duty of loyalty on section 302 trustees by permitting employer contributions to a welfare trust fund only if the contributions are used 'for the sole and exclusive benefit of the employees....' Section 1104 of ERISA imposes a similar duty of loyalty, and not surprisingly the courts have applied the 'arbitrary and capricious' standard under ERISA as well." *Firestone*, 828 F.2d at 141 (quoting *Struble v. New Jersey Brewery Employees' Welfare Trust Fund*, 732 F.2d 325, 333 (3d Cir.1984)).

the court to adopt a deferential standard when reviewing the administration of LMRA welfare trust funds. However, ERISA does not provide for similar precautions. As the *Firestone* court pointed out, an unfunded ERISA plan may be controlled entirely by the employer whose impartiality is far from certain. *Firestone*, 828 F.2d at 144. Further, where a plan is unfunded, an employer has even greater reason to deny benefits, for those' funds not disbursed as employee benefits return to the employer's coffer. For the above reasons, the Third Circuit rejected the arbitrary and capricious standard and decided to view the trust document as a contract entered into by two entities bargaining at arms length. Under this standard, the court considered relevant the industry-wide practice with respect to severance pay plans in general and the company's past practice under the specific plan in question.

The strong argument asserted in *Firestone* may suggest a change in the courts' standard in reviewing plan administrator actions under ERISA. Yet, that opinion does not command a following among the circuits at the current time. We thus adhere to the traditional arbitrary and capricious standard. We observe, however, as we did in *Agee v. Armour Foods Co.*, 834 F.2d 144 (8th Cir.1987), that the district court, while ostensibly applying the arbitrary and capricious standard, in fact employed a stricter standard in its rigorous scrutiny of the plan administrator's action. In *Agee*, the district court determined that the employer's interpretation of the personnel manual passed a reasonableness test. Similarly, in the instant case, the evidence suggests that Diamond Shamrock's interpretation was clearly reasonable and would pass muster under this more demanding

standard. In essence, the standard of review of an administrator's decision requires the court to examine the facts and circumstances relating to the contractual term in issue. Where the plan administrator's decision cannot stand as a reasonable resolution of the controversy, the court may characterize that administrator's decision as arbitrary and capricious.

### D. The Merits

Employees argue that, even assuming the arbitrary and capricious standard applies in the instant case, the district court erred in finding that Diamond Shamrock met the standard as a matter of law. Specifically, employees argue that Diamond Shamrock acted arbitrarily and capriciously in: (1) interpreting the language of the separation pay plan to deny employees separation pay; (2) enacting a secret divestiture policy and concealing the policy from its employees; and (3) failing to meet the reporting and disclosure requirements of ERISA. We address each of these contentions in turn.

#### 1. *Plan Interpretation*

■ The separation pay policy contained in Diamond Shamrock's Manual offers separation pay to an employee who ceases work with Diamond Shamrock where "separation from employment is due to a * * * permanent layoff due to lack of work." The district court found that Diamond Shamrock did not act arbitrarily and capriciously in denying benefits to employees who had, following the sale of the Vitex division, been offered jobs with Mallinckrodt. Employees argue to the contrary, citing for support the *Gerson* court's finding that the separation pay policy required payment.[8]

---

**8.** Employees contend that the following language from the *Gerson* opinion illustrates the proper application of contract principles to the policy in question:

The language concerned in the instant case shows employees were entitled to the severance pay. Sale of the division ended their connection with employer; there was no further work for them with employer. * * * If employees had not been offered jobs by the new owners, it is conceded they would have

been entitled to severance pay under the plan. But, nothing in the language of the policy itself distinguishes the case where they are offered employment with the new owner from the case where they are not offered such employment. We conclude there is no reason under the language of the policy to deny employees the severance pay.

*Gerson v. Diamond Shamrock Corp.*, 710 S.W.2d 368, 369 (Mo.Ct.App.1986) (citations omitted).

This court must uphold Diamond Shamrock's interpretation of its separation pay policy, so long as that interpretation is reasonable, regardless of whether it is the best interpretation possible. *See Jung*, 755 F.2d at 713. Further, the district court's legal conclusion regarding the reasonableness of Diamond Shamrock's interpretation rested on three factual determinations which we may not disturb unless they are clearly erroneous. *See* Fed.R.Civ.P. 52(a). These findings are: (1) that Employees did not become "unemployed" and missed neither work nor pay as a result of the sale of Vitex to Mallinckrodt; (2) that Diamond Shamrock adopted the separation pay policy in order to bridge the gap between the involuntary termination of an employee's employment with Diamond Shamrock and his/her obtaining new employment;[9] (3) that in the past, Diamond Shamrock consistently provided separation pay to those employees who suffered involuntary unemployment as a result of divestiture, but denied benefits to those employees who continued their employment with a purchaser of the business sold by Diamond Shamrock.[10] Based on these facts demonstrated at the hearing, the court held that Employees experienced "no lack of work" according to the policy terms and thus were not entitled to separation pay.

After thoroughly reviewing the record, we cannot say that the district court's fact findings are clearly erroneous such that they leave a "definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Further, we conclude that the court's legal determinations derive logically from the facts and square completely with the law in this circuit. *See Agee v. Armour Foods Co.*, 834 F.2d 144 (8th Cir.1987); *Quinn v. Burlington N., Inc. Pension Plan*, 664 F.2d 675 (8th Cir. 1981), *cert. denied*, 456 U.S. 928, 102 S.Ct. 1976, 72 L.Ed.2d 444 (1982). Thus, we affirm the district court's determination upholding Diamond Shamrock's interpretation of its separation pay plan.

### 2. *Enactment of a Special Separation Pay Policy*

In October 1980, Diamond Shamrock adopted a Divestiture Policy which did not diminish or change in any way the separation pay due an employee who loses his/her job with Diamond Shamrock and is not offered employ with the purchasing company. However, the new policy explicitly specified that employees who, upon sale of their division, are offered, and refuse work with the purchasing company, will not be eligible for separation pay. The district court found both that Diamond Shamrock did not conceal its Divestiture Policy from Employees and that the policy merely made explicit the company's consistent past interpretation of its separation pay plan.[11]

---

9. In their brief, Employees argue that the separation pay policy, like all benefits, serves as an inducement for individuals to join the Diamond Shamrock workforce. They maintain that where the purchasing company does not provide the same benefit package as did the seller company, the employees have suffered a loss and are entitled to separation pay. It is true that an employee's benefit package is often as important as the hourly wage he/she receives. Employees who, following divestiture, are rehired at comparable salaries still may lose substantial sums through the discontinuance of benefits. However, the record does not reflect whether Mallinckrodt assumed Diamond Shamrock's benefit package. Thus, though disturbed by the prospect that the former Vitex workers currently at Mallinckrodt may have lost benefits, we cannot address the issue.

10. That the district court considered Diamond Shamrock's past practice of administering its separation pay plan comports with the *Bruch* court's opinion which lists employer past practice as one factor relevant in determining the reasonableness of a plan administrator's interpretation of an ERISA benefit plan. *See Bruch v. Firestone Tire & Rubber Co.*, 828 F.2d at 145.

11. The district court held:

    [t]he Divestiture Policy did not modify the Separation Pay Policy's eligibility conditions in contemplation of the sale of Vitex or any other Diamond Shamrock business, as it restated Diamond Shamrock's consistent past interpretation and application of the Separation Pay Policy and predecessors thereto, that employees who transferred to a purchaser of one of Diamond Shamrock's businesses or transferred to other jobs within Diamond Shamrock and suffered no unemployment upon the sale, were not eligible to receive

Employees maintain that this finding does not comport with the facts. First, they point to the heading "CONFIDEN-TIAL" emblazoned across the top of the document setting forth the Divestiture Policy. This, they maintain, proves that Diamond Shamrock improperly kept the policy hidden. Second, they dispute the district court's determination that the Divestiture Policy merely states explicitly what the original separation pay policy represents implicitly. They argue that contrary to what Diamond Shamrock argued and the district court found, the policy's purpose was not to provide unemployment benefits but rather to give notice, or pay in lieu thereof, when an employee is terminated. They point out that the separation pay policy draws no distinction between a situation where an employee, immediately following termination, is offered a job by an unrelated employer, and one in which an employee receives an offer from the purchaser of the acquired divested business. From this observation, they reason that the original policy does not support a reading whereby employees accepting work with the purchasing company are denied separation pay, while those accepting work with an unrelated company remain eligible. Thus, Employees argue, the 1980 policy modifies and changes the initial separation pay policy and constitutes a "secret amendment" which should not be given effect by this court.

We reject these arguments. First, the fact that the 1980 Divestiture Policy was stamped "CONFIDENTIAL" does not advance Employees' case. At oral argument, Diamond Shamrock's counsel pointed out that the document explicating the new Divestiture Policy was marked confidential because it was an interoffice memo being circulated among the company's staff prior to general announcement. That an interoffice memo setting forth the tentative policy was marked confidential does not mean that the company intended the policy be kept secret. Second, that the original policy allows for payment of benefits to an

separation pay benefits, and that only employees who became unemployed as a result of the divestiture were eligible to receive such benefits.

employee offered employment by an unrelated third party employer does not require a similar allowance to an employee offered employment by a purchaser of a Diamond Shamrock division. Nor does it disprove Diamond Shamrock's contention that the purpose of the policy was to provide unemployment benefits. Though Diamond Shamrock may intend its policy apply only to workers suffering actual involuntary employment, it cannot know or predict how long a terminated employee will remain unemployed. Thus, Diamond Shamrock, in adopting a blanket policy applicable to all employees, assumes the risk that an employee will receive an early offer rendering the separation pay unnecessary. Where, as in a divestiture situation, an employer knows that an employee will receive an immediate offer, it is eminently reasonable to exclude those employees from separation pay. The district court properly viewed the 1980 Divestiture Policy as an explanatory addendum to the separation pay policy, and properly found Diamond Shamrock's interpretation of that policy reasonable.

E. Reporting and Disclosure Requirements

The district court held that Diamond Shamrock sufficiently complied with ERISA to allow the company to claim ERISA protection. While finding that Diamond Shamrock failed to comply with the statute's reporting and disclosure requirements, the court determined that the violations resulted in "no substantial harm" and thus did not violate the arbitrary and capricious standard. Employees argue that such a ruling ignores the facts and misapplies relevant law. However, Employees produced no facts at the hearing showing that they did suffer substantial harm, and cite no case calling the district court's analysis into doubt. *Blau v. DelMonte Corp.*, 748 F.2d 1348 (9th Cir.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 1983, 88 L.Ed.2d 152 (1985), the main case upon which Employees rely, is inapposite.

*Simmons v. Diamond Shamrock Chemicals Co.*, 658 F.Supp. 1053, 1055 (E.D.Mo.1987) (order granting summary judgment).

Contrary to the case at bar, the employer in *Blau* had actively concealed its severance allowance policy, failing to publish or in any way inform salaried employees of its existence, content, or terms. *Blau*, 748 F.2d at 1351. Moreover, in *Blau*, the policy was applied in a discriminatory manner, and the company neglected to respond to plaintiff's demand for severance pay. In the instant case, the district court found that Diamond Shamrock never concealed the Divestiture Policy, that the named plaintiffs Simmons and Cole knew of the policy's existence, that the policy was not applied in a discriminatory manner, and that Employees never made any claim for separation pay prior to bringing suit.

Far from mirroring a *Blau* scenario, this case more closely resembles *Pabst Brewing Co. v. Anger*, 784 F.2d 338 (8th Cir. 1986), *aff'g*, 610 F.Supp. 214 (D.Minn.1985), where this court affirmed the district court's finding that employer Pabst's technical non-compliance with the disclosure in reporting requirements of ERISA did not comprise arbitrary and capricious behavior. In that case, Pabst's severance policy was "anything but secret" and the alleged ERISA violations "d[id] not reach the level found in *Blau*." *Pabst*, 610 F.Supp. at 216. The reasoning in *Pabst* supports the district court's determination.

Accordingly, we affirm the district court opinion in all respects.