Maureen H. SHAWVER, et al., Plaintiffs,

v.

R.H. MACY & CO., INC., et al., Defendants.

Carol L. HARPER, et al., Plaintiffs,

v.

R.H. MACY & COMPANY, INC., et al., Defendants.

Billie GRADY, et al., Plaintiffs,

v.

DILLARD DEPARTMENT STORES, INC., et al., Defendants.

Nos. 87–0536–CV–W–JWO, 87–0554–CV–W–3–JWO and 87–1046–CV–W–JWO.

United States District Court, W.D. Missouri, W.D.

Oct. 19, 1988.

Herbert M. Rope, Edward J. Reitzes, Herbert M. Rope, P.C., Kansas City, Mo., for Shawver, et al.

Robert Ernest Gould, Thomas C. Simon, Gould and Moore, Kansas City, Mo., for Harper, et al.

Larry Delano Coleman, Kansas City, Mo., for Grady, et al.

E.J. Holland, Jr., Spencer, Fane, Britt & Browne, Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDERS ON MOTIONS FOR SUMMARY JUDGMENT

JOHN W. OLIVER, Senior District Judge.

### I

The above-captioned cases pend on separate cross-motions for summary judgment limited to severance pay issues under the Employee Retirement Income Security Act of 1974 (ERISA) as amended, 29 U.S.C. § 1001, et seq.

Pursuant to discussion at a pre-trial conference held December 14, 1987, the parties in all three cases agreed, and the Court approved, that the severance pay issues would be separated for decision under Rule 42(b) of the Federal Rules of Civil Procedure. An order to that effect was issued March 16, 1988 and a schedule for the presentation of the ERISA claims to this Court for resolution was established. The three cases are:

(1) **Maureen H. Shawver, et al., v. R.H. Macy & Co., et al (Shawver):**

This case involves twenty-two plaintiffs who were employed by Macy's until February or March 1986. All plaintiffs except perhaps one were offered immediate employment by Dillard's Independence Center store until April 4, 1986, when that store was closed and all plaintiffs were terminated from their employment with Dillard's. All except three plaintiffs were subsequently employed by Jones when that company purchased the Dillard's Independence Center store in April 1986. Jones subsequently re-opened that store in August 1986. Only three of the twenty-two plaintiffs fully exhausted their administrative remedies.

(2) **Carol L. Harper, et al., v. R.H. Macy & Co., et al (Harper):**

This case involves two plaintiffs who were employed by Macy's prior to March 3, 1986 at which time they began working for Dillard's. Both plaintiffs subsequently resigned from Dillard's after having worked for Dillard's for less than one month.

(3) **Billie Grady, et al., v. Dillard Department Stores, Inc., et al (Grady):**

This case involves three plaintiffs employed by Macy's until March 2, 1986 who were immediately employed by Dillard's. All plaintiffs were terminated from Dillard's employment when a corporate decision led to the elimination of their positions. This decision occurred 15–16 months after leaving Macy's employment.

## II

### STIPULATED FACTS

All parties in all three cases have stipulated to the following relevant facts:[1] (1) by no later than January 21, 1986, R.H. Macy & Co., Inc. (Macy's) made a public announcement of the transfer of ownership of certain Macy's stores to Dillard Department Stores, Inc. (Dillard's); (2) on January 20, 1986 Macy's and Dillard's finalized and executed a written agreement memorializing the agreement they had reached for the sale and transfer of the properties involved. A copy of that agreement was filed under seal with the Court. (3) Ownership of certain Macy's stores including the Mission, Kansas store, the Independence Center store, the Landing store, and the Indian Springs store was transferred to Dillard's effective March 3, 1986; (4) Macy's maintained a Severance Allowance Plan (Plan)[2] which was in effect on March 2, 1986; (5) the Plan was administered by Macy's; (6) the Plan provided that active full-time and part-time employees of Macy's were covered by the Plan after completion of one-year continuous service; (7) all plaintiffs were active full-time or part-time employees on March 2, 1986 who had completed at least one-year continuous service; (8) none of the plaintiffs received the Severance Allowance; and (8) certain

---

1. These are general facts common to all three cases compiled from the three separate stipulations of fact submitted in the three cases.

2. This plan was administered by Macy's and was an "employee welfare benefit plan," within the meaning of ERISA. An "employee welfare benefit plan" is broadly defined to include:

> [A]ny plan, fund or program which was ... established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their

beneficiaries, through the purchase of insurance or otherwise, (A) ... unemployment, or vacation benefits, ... or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1). Section 186(c), cited in subsection (B) above, specifically lists "severance benefits." A copy of Macy's Midwest Severance Allowance Plan is attached as Appendix A to this order and incorporated by this reference in this Court's finding of fact.

other employees covered by the Plan did receive the Severance Allowance.

Additional facts were either separately stipulated or are undisputed in each of the three cases.

### A. Shawver

The following additional facts are undisputed by the parties in *Shawver:*

1. Each plaintiff was employed continuously by Macy's for at least one year prior to March 3, 1986. Parties cannot agree upon specific dates of employment. In the event of finding for the plaintiff on Count I, evidence may be required. Stip. ¶ 4.

2. All plaintiffs were last paid by Macy's for work periods ending either February 28, 1986 or March 2, 1986. Stip. ¶ 6.

3. All plaintiffs with the possible exception of L. Schroeder remained at or were transferred to the store at Independence Center and were there employed by Dillard's. L. Schroeder alleges she was not offered employment at the Independence Center store after March 3, 1986 but defendants were unable to verify that at the time of filing of this stipulation. Stip. ¶ 7.[3]

4. The following named former employees of Macy's (not plaintiffs herein) received severance allowance or an amount equivalent to what severance allowance would have been:

a. Dorothy Davis and Margaret Fraundorfer did not continue employment with either Macy's or Dillard's following the closing of the Macy's downtown store and the sale of the Macy's store at Independence Center. Ms. Davis and Ms. Fraundorfer elected to receive the pension benefits to which they were entitled.

b. The positions held by Dorothy Dodson and Norma Johnson in the Macy's Midwest Division were eliminated in an amalgamation which occurred in early 1985.

Ms. Dodson and Ms. Johnson in 1985 elected to receive the retirement benefits to which they were entitled.

c. On or about February 28, 1986 Majorie Moyer was entitled to receive retirement benefits from R.H. Macy & Co., Inc.'s retirement program and elected to do so. Following the close of Macy's downtown store and the sale of the Macy's store at Independence, Ms. Moyer continued employment at the Dillard's store in Independence Center. When the Dillard's store at Independence Center was sold to The Jones Store Company, Jones did not offer employment to Ms. Moyer. Subsequently R.H. Macy & Co., Inc., voluntarily paid an amount to Ms. Moyer equivalent to what severance allowance would have been. Stip. ¶ 8.

5. Dillard's operated the Independence Center store until about April 4, 1986 at which time the Independence Center store was closed and all plaintiffs were terminated from Dillard's employment. Macy's name continued to appear on the side of the building. Stip. ¶ 9.

6. The Independence Center store was subsequently transferred to Jones Store Company (Jones). Stip. ¶ 10.

7. All plaintiffs with the possible exceptions of D. Rohrbach and L. Schroeder were invited by Jones on about April 1, 1986 to apply for employment with Jones to commence upon the store's reopening in August 1986. Stip. ¶ 11.

8. All plaintiffs with the possible exceptions of M. Krohn, D. Rohrbach, and L. Schroeder were subsequently employed by Jones.[4] Stip. ¶ 12.

9. The following plaintiffs submitted to Macy's claims for severance allowance which were denied:

Maureen H. Shawver

---

3. The question of whether L. Schroeder was or was not offered employment is an open question that cannot be decided on a motion for summary judgment. If, in fact, she was not offered employment, she was not required to exhaust and would be entitled to severance pay in the same manner that other employees, not offered employment, were paid. *See Shawver* Stip. ¶¶ 8, 21.

4. The same open question stated in regard to plaintiff L. Schroeder in footnote 3 is presented in regard to plaintiffs D. Rohrbach and M. Krohn. That question may also be present in regard to J. Evans who was added as a party on March 31, 1988 but about whom no facts are stipulated.

Nora Daugherty
Prentice J. Hildebrand
Linda M. Cain
Patricia Harris
Gloria F. Ramirez
Donna Ritter.

Stip. ¶ 17.

10. The following plaintiffs did not submit a claim for severance allowance:

Marilyn J. Barbour
Bonnie Beth
Maxinne Briggs
Anne C. Gooch
Ila June Hayes
Jeanette R. Holbert
Marsha R. Holderness
Patricia A. Kratz
Marilyn Krohn
G. Maxine Moenkhoff
Eleanor L. Ninemire
Dale Prewitt
Donna S. Rohrbach
Linda Schroeder

Stip. ¶ 18.

11. The following plaintiffs submitted to Macy's written requests for review of denial of severance allowance which were denied: [Thus the following plaintiffs are the only *Shawver* plaintiffs who have fully exhausted their administrative remedies.]

Nora Daugherty
Patricia Harris
Donna Ritter.

Stip. ¶ 19.

12. The following plaintiffs did not submit a written request for review of denial of severance allowance:

Maureen H. Shawver
Linda M. Cain
Prentice J. Hildebrand
Marilyn J. Barbour
Bonnie Beth
Maxinne Briggs
Anne C. Gooch
Ila June Hayes
Jeanette R. Holbert
Marsha R. Holderness
Patricia A. Kratz
Marilyn Krohn

G. Maxine Moenkhoff
Eleanor L. Ninemire
Dale Prewitt
Gloria Ramirez
Donna S. Rohrbach
Linda Schroeder.

Stip. ¶ 20.

13. Macy's voluntarily paid an amount equivalent to what the Severance Allowance would have been to any employee who was not offered employment by Jones following the transfer of ownership of the Independence Center store to Jones. Stip. ¶ 21.

14. A list of employees covered by the Macy's Midwest Severance Plan receiving severance allowance or an amount equivalent to severance allowance following the transfer of Macy's stores in the Kansas/Missouri area to Dillards [was] attached as Exhibit D. Stip. ¶ 22. [Exh. D includes the names of 194 employees].

### B. Harper

The following facts are undisputed by the two plaintiffs Carol Harper and Jerre Sardou, and the defendants.

1. C. Harper and J. Sordou were employed continuously by Macy's for five years or more prior to March 3, 1986. Stip. ¶ 4.

2. C. Harper resigned from Dillard's employment on March 22, 1986. Plaintiff Sardou resigned March 28, 1986. Stip. ¶ 7.

3. Both plaintiffs submitted to Macy's a claim for Severance Allowance and a written request for review of the subsequent denial by Macy's. Stip. ¶¶ 11, 12.

4. Employees at the Independence Center who were offered employment by Dillard's but were not offered employment by Jones after the Independence Center store was sold by Dillard's to Jones were paid an amount equal to what their severance pay would have been if they had not been offered employment by Dillard's. Stip. ¶ 16.

5. Immediately prior to and until March 2, 1986, plaintiff Harper was employed by Macy's in what Macy's referred to as a "Senior Executive" position at a yearly salary of $32,500 plus benefits. On March 3,

1986 plaintiff Harper became a Personnel Manager for Dillard's at the same annual income. However, she was no longer classified as a salaried employee and she was required to record her time worked on the same basis as other non-salaried employees. Stip. ¶ 17.

6. Plaintiff Sardou was employed by Macy's as a "Junior Executive" at a yearly salary of $19,000 plus benefits. Upon employment with Dillard's, at the same income, she was no longer classified as a salaried employee and she was required to record her time worked. Stip. ¶ 18.

### C. Grady

The following facts have been stipulated to by the plaintiffs Grady, Deere, and Eubank and by defendants Macy's and Dillard's:

1. Prior to March 3, 1986 plaintiffs were continuously employed by Macy's for a period of five years or more and had been salaried employees whose titles were: "Loss Prevention Coordinator, Junior Executive." Stip. ¶¶ 4, 13.

2. On or after March 3, 1986, plaintiffs were employed by Dillard's as hourly employees but with total incomes equal to what their salaries had been at Macy's. Stip. ¶ 14.

3. Plaintiff Grady worked for Dillard's at the Landing store until May 1986 when she was transferred to the Oak Park store and subsequently was transferred to the Plaza Dillard's where she worked until no later than July 4, 1987. Stip. ¶ 6.

4. Plaintiff Deere worked for Dillard's until June 27, 1987. Stip. ¶ 6.

5. Plaintiff Eubank worked for Dillard's until July 4, 1987. Stip. ¶ 6.

6. All three plaintiffs were terminated when Dillard's made a corporate determination to replace in-house security personnel, such as plaintiffs, with off-duty police officers. Stip. ¶ 6. [This termination occurred 15–16 months after leaving Macy's employment.]

7. Each of the plaintiffs submitted a claim for Severance Allowance to Macy's and each claim was denied. Stip. ¶ 10.

### III

### PARTY CONTENTIONS

#### A. Shawver

Plaintiffs in *Shawver* contend that they were permanently terminated from their employment with Macy's on March 2, 1986 and thus are entitled to the severance allowance provided in Macy's Severance Allowance Plan which stated in part: "Severance Allowance is granted when you are permanently terminated or laid off for periods that exceed 90 days." They argue that they were misled by Macy's into believing that the subsequent employment with Dillard's would be permanent and further contend that Macy's management knew all along that Dillard's intended to close the Independence Center store.

Plaintiffs' argue that Macy's Plan administrators' interpretation of that Plan is both an unreasonable interpretation in light of prior case law and is arbitrary and capricious. Furthermore, plaintiffs argue that this Court should adopt and apply a higher fiduciary standard of review, arguing that the arbitrary and capricious standard is too deferential to employer/administrators such as the defendants in this case.

#### B. Harper

Plaintiffs in *Harper* contend that although they were offered and accepted continuing employment with Dillard's, they accepted those positions with the belief that the new employment would be comparable to their previous employment with Macy's. The *Harper* plaintiffs contend that their new positions were not comparable; that they lost substantial benefits; and that they were "in actual fact terminated from their employment by Macy's without prior notice." Plts' Mot. for S.J. pursuant to Court's Order of May 10, 1988 at 6. They further contend that "Macy's has adopted a specious interpretation of the plan solely for the purpose of denying them benefits." *Id.* Plaintiffs in *Harper* presented their own arguments but also expressly adopted the "argument and authorities submitted by the other plaintiffs in this case." *Id.*

## C. Grady

Plaintiffs in *Grady* contend that they were involuntarily terminated from Macy's employment as of March 2, 1986, the date of formal transfer of ownership to Dillard's. They argue that such transfer is the "ultimate form of involuntary termination of employment." Sugg. in Supp. of Plts' Cross–Mot. for S.J. at 2. Plaintiffs argue that to deny severance benefits to these employees would be both arbitrary and capricious as a matter of law. Plaintiffs maintain that they are entitled to such benefits and that that entitlement "rest[s] upon the *terms of the Severance Allowance Plan* itself, and nothing else." Plts' Resp. to Defts' Mot. for S.J. at 3.

## D.

Defendants rely on three major grounds in support of their motions for summary judgment filed in each of three cases. Those grounds are: (1) exhaustion, (2) the action of the Plan administrators was not arbitrary and capricious within the meaning of what they contend is the applicable standard of review, and (3) the Plan administrators' reading of the Plan was reasonable and thus cannot be categorized as arbitrary and capricious under the Eighth Circuit's most recently stated standard of review.

Defendants contend that the following reasons support defendants' denial of severance benefits to all plaintiffs in each case. Sugg. in Supp. of Defts' Mot. for S.J. at 8.

1. The purchase agreement negotiated between Macy's (Seller) and Dillard's (Purchaser) provided that Dillard's would offer continuing employment to existing Macy's employees. Article VI § 6.1. *Offer to Employ* of the Purchase and Sale Agreement states:

Subject to the provisions of Section 6.3 hereof, Purchaser will offer continuing employment to all Seller's employees who are working at the Properties as of the Closing Date (other than up to 30 employees of Seller selected by Purchaser, each of who presently serves one or more of the functions described on Schedule M hereto, which functions are not required by Purchaser) at salaries comparable to the salaries then paid to such employees by Seller and with a fringe benefits package which, when taken as a whole, will provide a substantially comparable level of benefits to that presently provided by Seller.

A copy of Article VI of Purchase and Sale Agreement is attached as Appendix B and incorporated herein by this reference in our findings of fact.

2. Dillard's did offer continuing employment to plaintiffs at their current level of pay. Therefore, plaintiffs were not "permanently terminated" by either Macy's or Dillard's according to the terms and meaning of the Plan provisions.

3. The Plan existed to provide employees who were permanently terminated without notice a temporary monetary benefit between employment. Plaintiffs had sufficient notice of the sale and were offered the opportunity to continue their employment and did continue their employment after the sale to Dillard's.

## IV

### THE EXHAUSTION REQUIREMENT

Defendants contend that those plaintiffs who did not follow the steps set out in the Plan by making a claim to Macy's for severance benefits and making a written appeal to the Plan administrators within 60 days of the denial have failed to exhaust and are thereby barred from bringing the present action. Defendants rely primarily on *Anderson v. Alpha Portland Indus. Inc.,* 727 F.2d 177, 180 (8th Cir.1984), *on rehearing,* 752 F.2d 1293, *cert. denied,* 471 U.S. 1102, 105 S.Ct. 2329, 85 L.Ed.2d 846.

Plaintiffs argue that under the permissive language of the Plan, plaintiffs were not required to take any action in order to receive severance benefits. They contend that nowhere does the Plan require that an employee file a claim for severance pay and that the initiative rests with the employer Macy's to notify the employee if there has been a denial of benefits. They argue that the "clear implication is that benefits are to

be paid automatically barring a denial." Sugg. in Supp. of Plts' Mot. for S.J. at 8.

Plaintiffs also argue that it would have been futile for them to have attempted to exhaust their remedies. Plaintiffs rely upon *Vaca v. Sipes,* 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967), and a number of district court cases which do indeed state that the requirement of exhaustion may be excused when such exhaustion would be futile.

Plaintiffs further contend that the exhaustion doctrine is not to be applied inflexibly citing *McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), which held that "[t]he exhaustion doctrine must be tailored to fit the peculiarities of the administrative system Congress created." *Id.* The Court there, however, was dealing with a failure to appeal a selective service classification and not with an ERISA claim.[5]

## ANALYSIS

*Amato v. Bernard,* 618 F.2d 559 (9th Cir.1980), relied on by defendants, is one of the leading cases that required exhaustion. That case recognized that there is no express statutory requirement in ERISA for exhaustion. *Amato* noted, however, that the Act provided in 29 U.S.C. § 1133 [6] that every employer benefit plan shall provide for a specific appeal procedure.[7] The important policies underlying the use of the exhaustion doctrine in ERISA cases was set forth in *Amato,* 618 F.2d at 567:

[T]he institution of ... administrative claim-resolution procedures was apparently intended by Congress to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned. It would certainly be anomalous if the same good reasons that presumably led Congress and the Secretary to require covered plans to provide administrative remedies for aggrieved claimants did not lead the courts to see that those remedies are regularly used.

The Eighth Circuit has held that "we are persuaded to require exhaustion under ERISA by the Ninth Circuit's analysis in *Amato....*" *Anderson,* 727 F.2d at 180. This Court must follow the Eighth Circuit's decision in *Anderson.*

As well settled as the exhaustion requirement is in actions such as this, the Supreme Court has recognized exceptions to that requirement. One such exception is when exhaustion "would be wholly futile." *Glover v. St. Louis–San Francisco Ry,* 393 U.S. 324, 330, 89 S.Ct. 548, 551, 21 L.Ed.2d 519 (1969).

■ Plaintiffs fail to establish a futility exception to the exhaustion requirement. It is clear from the facts stipulated to by all the parties (*see* general fact # 8; Stip. ¶¶ 8, 21, 22 in *Shawver;* Stip. ¶ 16 in *Harper;* Affidavit of M. Montanino dated Aug. 18, 1988) that it was not futile to follow the express procedures set out in the Plan be-

---

**5.** Plaintiffs also cite two additional cases: *McGee v. United States,* 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971), and *United States v. Newmann,* 478 F.2d 829 (8th Cir.1973). Both cases also deal with armed services proceedings which are distinguishable from the case at hand.

**6.** In accordance with 29 U.S.C. § 1133, the regulations of the Secretary provide that every employee benefit plan shall:

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

**7.** In spite of the absence of any express statutory requirement, courts in increasing numbers have held that a participant must first exhaust internal review procedures. *See* Note, Civil Actions under ERISA Section 502(a): *When Should Courts Require that Claimant's Exhaust Arbitral or Intrafund Remedies?,* 71 Cornell L.Rev. 952 (1986); *Annotation, Exhaustion of Administrative Remedies as Prerequisite to Suit under Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1001, et seq.),* 54 ALR Fed. 364 (1984).

cause numerous employees did receive benefits.

The Court while recognizing the futility exception has held that an employee "is bound by the terms of that agreement which govern the manner in which contractual rights may be enforced. For this reason, it is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures...." *Vaca,* 286 U.S. at 184, 87 S.Ct. at 913 citing *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965).

The Plan contained the following language:

> Severance Allowance is provided for all eligible employees of Macy's Midwest who are terminated or laid off for periods of more than 90 days. Depending on the length of your Macy's continuous service, you will receive a specified number of weeks of your salary in separation allowance.

The Severance Allowance Plan also provided that "Severance Allowance benefits will be explained to you upon your termination from the Company. If applicable, you will automatically receive a lump sum payment." Plan at 2.

If the administrators determined that an employee had not been terminated within the meaning of the Plan, it is obvious that such an employee would not "automatically receive a lump sum payment." The failure of an employee to "automatically receive a lump sum payment" obviously placed such an employee on notice that he or she was not going to receive a severance allowance benefit unless such an employee made a claim for such a payment. The Plan anticipates that should an employee make a claim, the claim would either be granted or denied. The Plan expressly provides that "[i]f the Company has denied a claim for

Severance Allowance, you will receive notice" and then provides that "[w]ithin 60 days of receiving notice you may file for a review of the denial."[8] *Id.*

### A. Shawver

It is undisputed that only plaintiffs N. Daugherty, P. Harris and D. Ritter have fully exhausted their administrative remedies by submitting written requests for review of their benefit denials. *See* Stip. ¶ 17, 18, 19. Therefore, this Court finds and concludes that defendants' motion for summary judgment should be and is hereby granted on exhaustion grounds in regard to the ERISA claims of those *Shawver* plaintiffs who have failed to exhaust their administrative remedies. Entry of an order partially granting defendants' motion for summary judgment in *Shawver* will be deferred until after a separate conference with counsel in that case has been held. It should further be noted that an unresolved question of material fact concerning whether or not D. Rohrbach, L. Schroeder, and M. Krohn (and possibly added plaintiff Evans) were or were not offered continued employment. This Court's ruling on that phase of defendants' motion for summary judgment will also be deferred until that question is resolved.

### B. Harper

Both plaintiffs submitted a claim for the Severance Allowance and a written request for review of the subsequent denial (Stip. ¶ 11, 12), therefore both plaintiffs in *Harper* have exhausted their remedies. Defendants' motion for summary judgment may not properly be granted on exhaustion grounds in regard to those two plaintiffs.

### C. Grady

The record is silent in regard to whether the three *Grady* plaintiffs exhausted their remedies because whether or not they have submitted a written request for review of

---

**8.** The Plan further provides:

> The written request [for a review] should be directed to the Company. Your Personnel Office can assist you in preparing the claim. You may also ask for a review of relevant documents and for the opportunity to submit issues and comments.
>
> The Company normally will make a decision on the review of your claim denial within 60 days. However, if you have asked to review documents or to submit issues and comments, the Company may need more time—normally, not more than 120 days after receiving your request.
>
> You will receive a copy of the decision, in writing; including specific reasons for the decision and references to those plan provisions on which the decision is based.

their denial has not been stipulated to by the parties. However, whether or not these plaintiffs may have exhausted their remedies is not controlling.[9] Because we will find and conclude that the denial of benefits to these plaintiffs was neither unreasonable nor arbitrary and capricious, defendants' motion for summary judgment will be granted on grounds other than exhaustion for reasons that will be later stated.

## V

## STANDARD OF REVIEW TO BE APPLIED

The defendants argue that the standard of review, first articulated in *Quinn v. Burlington Northern, Inc.*, 664 F.2d 675 (8th Cir.1981), and subsequently reiterated in *Agee v. Armour Foods Co.*, 834 F.2d 144 (8th Cir.1987); *Pabst Brewing Co. v. Anger*, 610 F.Supp. 214 (D.Minn.1985), *aff'd*, 784 F.2d 338 (8th Cir.1986); and *Simmons v. Diamond Shamrock Corp.*, 844 F.2d 517 (8th Cir.1988), is the standard of review to be applied by this Court. The plaintiffs in *Harper* and *Grady* raise no question about the applicable standard of review.[10]

The *Shawver* plaintiffs concede that "the arbitrary and capricious standard has generally been used to govern judicial review of plan administrators' decisions pertaining to severance pay plans." Plts' Sugg. in Supp. of Mot. for S.J. at 6, citing *Pabst.*

Those plaintiffs, however, argue that "this Court is required to apply stringent fiduciary standards in judging Macy's actions" (*id.* at 10) and that "the very intent of ERISA itself has been ignored by rigid judicial adherence to the application of the arbitrary and capricious standard when employees are injured by a sale of assets." *Id.* at 10–11.

The *Shawver* plaintiffs contend that "[a]lthough the arbitrary and capricious standard has generally been accepted as the correct standard to apply in severance pay cases under ERISA, recent decisions have cast serious doubt on its validity in situations similar to this one" citing *Blau*, 748 F.2d 1348; *Struble v. New Jersey Brewery Employees' Welfare Trust Fund*, 732 F.2d 325 (3d Cir.1984); *Bruch v. Firestone Tire and Rubber Co.*, 828 F.2d 134 (3d Cir.1987).

The *Shawver* plaintiffs place primary reliance upon the Third Circuit's decision in *Bruch v. Firestone* and point to the fact that the Supreme Court's grant of certiorari in that case is "further evidence of the changing state of the law." Plts' Sugg. in Supp. of Mot. for S.J. at 9.[11]

This Court is required to follow the standard of review articulated and applied by our controlling court of appeals. That standard may, of course, be changed by a decision of the Court of Appeals for the Eighth Circuit sitting en banc or by a deci-

---

**9.** While the parties are not in agreement in regard to factual circumstances that relate to exhaustion and other issues such as whether or not plaintiffs were offered jobs when their security positions were eliminated, that circumstance does not foreclose consideration of other issues about which there is no dispute.

[Rule 56(c) ] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact ... Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–8, 106 S.Ct. 2505, 2509–2510, 91 L.Ed.2d 202 (1985).

**10.** Plaintiffs in *Grady* seek to distinguish the Eighth Circuit cases cited in the text and rely on

*Blau v. Del Monte*, 748 F.2d 1348 (9th Cir.1984), which involved the factual circumstances not dissimilar from the Eighth Circuit cases of *Morgan v. Mullins*, 643 F.2d 1320 (8th Cir.1981), and *Maness v. Williams*, 513 F.2d 1264 (8th Cir. 1975). We conclude that *Blau, Morgan,* and *Maness* are factually distinguishable.

**11.** The *Shawver* plaintiffs thus conclude that "[t]his Court is not compelled to apply the arbitrary and capricious standard to resolve the plaintiffs claims," that "for this Court to accept that it is 'bound' to this single standard constitutes faulty reasoning and overlooks the fact that federal courts have the power to create ERISA common law to remedy the employee injury situation" and that "[t]he arbitrary and capricious standard is wholly inappropriate because it blatantly ignores the economic loss suffered by the plaintiffs." *Id.* at 12.

sion of the Supreme Court. Until the standard of review is changed, however, we are bound by that standard whether we like it or not.

We agree with defendants' contention that the arbitrary and capricious standard was first articulated in *Quinn* and that the controlling standard is most recently stated as follows in *Simmons*:[12]

> In essence, the standard of review of an administrator's decision requires the court to examine the facts and circumstances relating to the contractual term in issue. Where the plan administrator's decision cannot stand as a reasonable resolution of the controversy, the court may characterize that administrator's decision as arbitrary and capricious.

844 F.2d at 522. The standard articulated in *Simmons* will be applied in all three cases.

## A. Shawver

■ This Court finds and concludes that the Plan administrators' interpretation of the Plan in regard to the three *Shawver* plaintiffs who have exhausted their administrative remedies cannot be determined at this time as a material fact in regard to the extent of the Plan administrators' knowledge is at issue.

## B. Harper

■ Article VI § 6.1 *Offer to employ* of the Purchase/Sale Agreement between Dillard's and Macy's provided that:

> Purchaser will offer continuing employment to all Seller's employees who are working at the Properties as of the Closing Date ... at salaries comparable to the salaries then paid to such employees by Seller and with a fringe benefits package which, when taken as a whole, will provide a substantially comparable level of benefits to that presently provided by Seller.

It is undisputed that the *Harper* plaintiffs received compensation from Dillard's comparable to the compensation paid them by Macy's. Stip. ¶¶ 17, 18. A material question of fact is presented, however, in regard to whether the fringe benefits package offered by Dillard's did, in fact, when taken as a whole, provide a substantially comparable level of benefits to that presently provided by Macy's.

Defendants argue that "[t]he receipt of fewer benefits, namely the lack of a severance pay plan, in jobs provided by the employer's successor, does not entitle the employee to severance pay from the previous employer" citing *Acton*, 815 F.2d 1161. Sugg. in Supp. of Defts' Mot. for S.J. at 14–15. We do not believe that *Acton* can be read so broadly. The plaintiffs in *Acton* made only conclusory allegations in regard to the reduction of benefits which they allegedly sustained. It is our view that the *Acton* court merely held that such conclusory allegations could not withstand the employer's motion for summary judgment.

Further, it is interesting to note that in *Sly v. P.R. Mallory & Co., Inc.*, 712 F.2d 1209 (7th Cir.1983), severance benefits were in fact paid to employees who refused an offer of continued employment which changed their status as a salaried employee to one who would be paid on an hourly basis.

The briefs of the parties in the *Harper* case do not focus on the particular factual circumstances which must be considered in determining whether Section 6.1 of the Purchase/Sale Agreement was reasonably interpreted and therefore not arbitrary and capricious under the applicable standard of review.

An order will be entered setting this case for a separate conference with the Court. We will defer ruling the cross-motions for summary judgment in the *Harper* case until after that conference is held.

## C. Grady

■ In light of *Simmons'* mandate that a plan administrators' interpretation must

---

**12.** The evolutionary development of the Eighth Circuit's most recent articulation of the standard can be traced from *Quinn* through *Pabst* and *Agee* to *Simmons*. *Simmons'* statement of the applicable standard reflects a moderation of the black letter language originally stated in *Quinn*.

stand if it is reasonable and thus meets the arbitrary and capricious standard, this Court finds and concludes that to deny severance benefits to former employees who have been employed for up to 15 months by a subsequent purchaser/employer is not unreasonable and may not, accordingly, be considered to be arbitrary and capricious. We therefore find and conclude that defendants' motion for summary judgment should be granted in the *Grady* case on the separated ERISA issue.

## VI

### REASONABLENESS OF PLAN INTERPRETATION

Defendants argue that the Plan administrators' denial of the Severance Allowance was a reasonable interpretation of that Plan in light of earlier case law and was consistent with prior practice under the Plan. The Plan language that is in question is what is meant by the phrase "Severance Allowance is granted when you are *permanently terminated* or laid-off for periods that exceed 90 days." *See* Appendix A at 1. (Emphasis added).

Defendants rely on principles recently articulated by the Eighth Circuit in *Pabst*. In *Pabst*, the employer brought an action seeking a declaration that its exchange of its St. Paul, Minnesota brewery[13] for Stroh's brewery in Tampa, Florida did not obligate Pabst to pay severance benefits where its employees received employment from Stroh's.[14]

The district court held and the court of appeals affirmed that Pabst's reading of the term "laid off" in its plan as not including employees who were never unemployed but continued their employment under a new employer was a reasonable interpretation of their severance plan—that such benefits "were intended for employees who

suffered at least some period of unemployment." *Pabst*, 610 F.Supp. at 217.

Defendants argue that such was also the intent and purpose of the Macy's Plan—to provide employees who were permanently terminated without notice a temporary monetary benefit. *See* Affidavit of M. Montanino at 1. Defendants maintain that Macy's employees who accepted similar jobs with the Purchaser/Dillard's were not entitled to the benefit. *Pabst; Acton v. Tosco Corp.*, 815 F.2d 1161 (8th Cir.1986) (per curiam).

Defendants also support their reasonableness argument by relying on the fact that Macy's had previously interpreted the Plan in a consistent manner. In 1985, when Macy's sold some of its Ohio stores, they did not provide severance benefits to those employees offered continued employment with the subsequent purchaser. Defts' Mot. for S.J.; Affidavit of Michael Montanino; Exh. A & B; and *see also Shawver* Stip. ¶¶ 8, 21, 22; *Harper*, Stip. ¶ 16.

Plaintiffs seek to distinguish earlier cases which allowed employers to refuse payment of severance benefits when employees were offered the opportunity to work for the new purchaser-employer. *See, e.g., Holland v. Burlington Industries, Inc.*, 772 F.2d 1140 (4th Cir.1985); *aff'd*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed. 2d 559, *cert. denied*, 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986); *Pabst Brewing Co.; Blakeman v. Mead Containers*, 779 F.2d 1146 (6th Cir.1985); *Agee v. Armour Foods Co.; Simmons v. Diamond Shamrock Corp.*, Plaintiffs argue that in the present case, the employment they received was not permanent and continuous—not a "mere continuation of their former employment." Sugg. in Supp. of Plts' Mot. for S.J. at 1.

---

**13.** Pabst had acquired its St. Paul brewery as a result of a merger with Olympia Brewery and part of the merger was an agreement by Pabst to abide by Olympia's Separation Form Employment Policy (SFEP).

**14.** The employees in *Pabst* sought severance benefits under the Olympia/Pabst SFEP which

contained a "provision [that gave] credit for all years of service since Olympia acquired the St. Paul Brewery and give 2 weeks pay plus benefits plus another week of pay plus benefits for each full year of service" to any employee laid off. *Pabst*, 610 F.Supp. at 216.

As recently as 1988, however, the Eighth Circuit in *Simmons* upheld as reasonable a decision by an employer not to pay separation benefits when he sold his business and his employees continued to be employed by the purchaser of that business. However, it must be pointed out that in *Simmons,* the plan explicitly stated that those employees offered work with the purchasing company who refused that offer would not be eligible for separation pay. The court stated "[t]his court must uphold Diamond Shamrock's interpretation of its separation pay policy, *so long as that interpretation is reasonable, regardless of whether it is the best interpretation possible." Simmons,* 844 F.2d at 523. (Emphasis added).

Thus, the law in this circuit is clear. So long as the interpretation is reasonable, this Court may not disturb that interpretation as being arbitrary and capricious. *See Simmons; Agee; Quinn.*

Defendants further argue that the severance pay was to be paid in lieu of notice; they contend that the Plan must be read in its entirety. That Plan states that "[d]epending on the length of your Macy's continuous service upon termination, you may receive severance allowance in lieu of notice...." *See* Appendix A at 1.

A strict reading of that language would suggest that severance pay would be paid only to those employees who were terminated without any prior knowledge of the transfer and subsequent termination. All parties have stipulated to the fact that by no later than January 21, 1986, Macy's made a public announcement of the transfer of ownership of certain Macy's stores to Dillard's. Thus, all plaintiffs had notice of the transfer that was to occur. The issue remains, as plaintiffs argue, did the *Shawver* plaintiffs have notice that they were to be terminated. This issue is of relevance only as to the three *Shawver*

plaintiffs who have fully exhausted their administrative remedies.

### A. Shawver

■ The question remains, is it "reasonable" for the Plan administrators to deny benefits to plaintiffs when those administrators may have been aware that the purchaser/employer company (Dillard's) would be selling that facility within one month to a third corporation (Jones) and that those employees could be out of work for periods over 90 days.[15]

That question, in our judgment, may not properly be decided on the record presently before this Court. "Implicit within any contract is the concept of 'good faith and fair dealing' between both parties." *Hanson v. Farmers Coop. Creamery Co.,* 403 F.2d 65, 69 (8th Cir.1968). *See also Bain v. Champlin Petroleum,* 692 F.2d 43, 47 (8th Cir.1982); 5 *Williston on Contracts* § 670 (3d Ed.1961); and *Restatement of the Law of Contracts (Second)* § 231.

> Especially is this [the good faith requirement] so when the parties enter into a contract of adhesion where terms are not openly negotiated. It is recognized: 'In dealing with standardized contracts courts have to determine what the weaker contracting party could legitimately expect by way of services ... and to what extent the stronger party disappointed reasonable expectations....'

*Slay Warehousing Co. v. Reliance Ins. Co.,* 471 F.2d 1364, 1368 n. 6 (8th Cir. 1973) quoting Kessler, *Contracts of Adhesion—Some Thoughts About Freedom of Contract,* 43 Col.L.Rev. 629, 637 (1943).

Surely, plaintiffs could expect such good faith in dealing with the Plan administrators whose fiduciary duty toward the beneficiaries of the Plan clearly underscores this duty of fair dealing.[16]

If the Plan administrators, in fact, knew of the imminent closing of the store at the

---

15. The Plan states benefits are to be paid to those permanently terminated for periods that exceed 90 days. All plaintiffs, with the possible exceptions of D. Rohrbach and L. Schroeder and M. Krohn (Stip. ¶ 12) were subsequently employed by Jones but after 90 days had

elapsed. (Dillard's closed April 2 and Jones opened on or about August 7, 1986.)

16. Those duties are described in part 4 of Title 1 of the ERISA Act, which is entitled "Fiduciary Responsibility," *see* § 401–414, 88 Stat. 874–890, 29 U.S.C. §§ 1101–1114.

time they interpreted the Plan not to afford benefits to those plaintiffs offered continued employment with Dillard's, the reasonableness of that action would have to be considered in light of such a factual situation. The question of what the Plan administrators knew at the time they interpreted the Plan is a material fact in controversy and therefore, this Court finds and concludes that defendants' motion for summary judgment cannot be granted as to the three plaintiffs in the *Shawver* case who have exhausted their administrative remedies.

## B. Harper

Plaintiffs argue that even though they did receive ongoing employment from Dillard's, they did not receive comparable employment. "In essence, the job offered to both plaintiffs by Dillard's was token employment obviously tendered for the specific purpose of giving weight to Macy's argument in support of the denial of severance pay...." Separate Mot. of Plts C. Harper and J. Sardou for S.J. Pursuant to Court's Order of May 10, 1988 at 3.

For reasons stated earlier, the Court will defer ruling the pending cross-motions for summary judgment in the *Harper* case until after the conference with the Court is held.

## C. Grady

This Court finds and concludes that it is a reasonable interpretation of Macy's Plan to deny benefits to those plaintiffs who were employed by Dillard's for periods of up to 15–16 months before being terminated when their security positions were eliminated due to a corporate decision. Defendants' motion for summary judgment on the ERISA issue will be granted and plaintiffs' motion for summary judgment on that issue will be denied. Entry of orders reflecting that action will be deferred.

For the reasons stated, it is

ORDERED (1) that entry of an order partially granting defendants' motion for summary judgment in *Shawver* should be and is hereby deferred until after the separate conference with counsel directed in Orders (5) and (6) is held. It is further

ORDERED (2) that the factual circumstances in regard to plaintiffs M. Krohn, D. Rohrbach and L. Schroeder (and possibly plaintiff Evans) will be discussed at the conference in the *Shawver* case. It is further

ORDERED (3) that this Court's ruling on both plaintiffs motion for summary judgment on the ERISA issue in *Harper* and defendants' motion for summary judgment on that issue in *Harper* should be and is hereby deferred until after the separate conference with counsel directed in Orders (5) and (6) is held. It is further

ORDERED (4) that plaintiffs' motion for summary judgment in *Grady* on the ERISA issue should be and is hereby denied and defendants' motion for summary judgment on that issue should be and is hereby granted. The entry of orders reflecting that action will be deferred until after the conference with counsel in *Grady* is held. The other issues presented in that case will be discussed at that conference. It is further

ORDERED (5) that separate conferences will be convened in each of the three cases in order that agreement may be reached in regard to what orders should be entered directing further proceedings in each case. The Court's law clerk will contact counsel to establish a convenient date for the conference. It is further

ORDERED (6) that counsel in each case shall confer prior to the date of each scheduled conference in order that they (1) agree upon an agenda for the conference and (2) to prepare a written statement of their respective views in regard to each item listed on the agreed agenda. The agreed agenda and the written statements of counsels' respective views shall be filed with the Court at least twenty-four (24) hours before the conference is to be held.

## APPENDIX A

## SEVERANCE ALLOWANCE

Severance Allowance is provided for all eligible staff associates of Macy's Missouri

—Kansas who are terminated or laid-off for periods of more than 90 days. Depending on the length of your Macy's continuous service, you will receive a specified number of weeks of your salary in separation allowance.

### Eligibility

Active full and part-time staff associates of Macy's Missouri—Kansas are automatically covered after completion of 1 year of continuous service. "Part-time" for purposes of this plan means that you are scheduled to work at least 20 hours each week. Enrollment is unnecessary.

### Cost

Severance Allowance coverage is paid wholly by Macy's.

### When You Are Covered

Severance Allowance is granted when you are permanently terminated or laid-off for periods that exceed 90 days.

### When You Are Not Covered

No Severance Allowance will be paid:
- if you resign
- if you are discharged due to:
  - dishonesty
  - violation of company policy, rules and practices

### Benefit Amount

Severance Allowance is determined according to your average weekly earnings, not including overtime pay or commissions. The calculation of the benefit payments is based on your pay roll rate times your work schedule.

Depending on the length of your Macy's continuous service upon termination, you may receive severance allowance in lieu of notice according to this schedule, to a maximum of 12 weeks:

| Length of Continuous Service | Severance Allowance |
|---|---|
| Less than 1 year | None |
| 1 year—3 years | One week's salary |
| 3 years—5 years | Two weeks' salary |
| 5 years or more | Two weeks' salary plus one week's salary for each year over 5 years. THE MAXIMUM PAYMENT IS TWELVE WEEKS' SALARY. |

MACY*S MISSOURI KANSAS

### How to Apply For Severance Allowance

Severance Allowance benefits will be explained to you upon your termination from the Company. If applicable, you will automatically receive lump sum payment.

### If A Claim Is Denied

If the Company has denied a claim for Severance Allowance, you will receive notice.

Within 60 days of receiving a denial notice you may file for a review of the denial. The written request should be directed to the Company. Your Personnel Office can assist you in preparing the claim. You may also ask for a review of relevant documents and for the opportunity to submit issues and comments.

The Company normally will make a decision on the review of your claim denial within 60 days. However, if you have asked to review documents or to submit issues and comments, the Company may need more time—normally not more than 120 days after receiving your request.

You will receive a copy of the decision in writing, including specific reasons for the decision and references to those plan provisions on which the decision is based.

### Other Information

The official name of the Plan described in this booklet is "Severance Allowance" (Plan Number 851).

The Plan is sponsored and administered by:

■■■■■

MACY'S Missouri—Kansas
1034 Main Street
Kansas City, Missouri 64105
Telephone: (816) 881–5500
EIN: 135596707

The designated agent for service of legal process under the plan is the Controller, Macy's Missouri—Kansas, 1034 Main Street, Kansas City, Missouri 64105.

Benefits are provided by Macy's out of general operating funds. The Plan's records are maintained on a fiscal year basis which ends on July 31.

## APPENDIX B

*Section 5.8. Method of Payment.* Unless otherwise specifically agreed by the parties, all payments to be made pursuant to this Agreement shall be made by wire transfer.

## ARTICLE VI

## SELLER'S EMPLOYEES

*Section 6.1. Offer to Employ.* Subject to the provisions of Section 6.3 hereof, Purchaser will offer continuing employment to all Seller's employees who are working at the Properties as of the Closing Date (other than up to 30 employees of Seller selected by Purchaser, each of who presently serves one or more of the functions described on Schedule M hereto, which functions are not required by Purchaser) at salaries comparable to the salaries then paid to such employees by Seller and with a fringe benefits package which, when taken as a whole, will provide a substantially comparable level of benefits to that presently provided by Seller. Seller's employees who accept Purchaser's offer of continuing employment will be given credit for their prior service with Seller for purposes of participation in Purchaser's employee benefit plans as follows:

    (i) Full Prior Service Credit for purposes of vacation eligibility.

    (ii) Full Prior Service Credit for health and medical benefits.

    (iii) Full Prior Service Credit for life insurance and travel and accident insurance.

    (iv) Full Prior Service Credit for participation and vesting in Purchaser's Section 401(k) plan.

    (v) Full Prior Service Credit for purposes of employee discounts.

    (vi) Full Prior Service Credit (with no break in eligibility) for purposes of all other benefits, other than in respect of Purchaser's currently existing profit sharing plan, Service Award Program or Corporate Officers Non–Qualified Pension Program.

*Section 6.2. Severance Payments.* (a) Purchaser shall reimburse Seller for an amount equal to (i) % of any severance payments made by Seller after the date of this Agreement to any employee employed at the Properties who is either (A) terminated by Seller prior to the Closing, (B) does not accept Purchaser's offer of continuing employment or (C) accepts Purchaser's offer of continuing employment but quits or claims nevertheless to have been discharged by Seller as a result of the sale of the Properties to Purchaser, and of any related attorneys' fees and other costs and expenses incurred in defending against such claims against Seller and (ii) % of all severance payments which Seller shall be obligated to make to any employee resulting from the termination by Purchaser of the employment of such employee following the Closing, whether or not such employee shall be a former employee of Seller, and of any related attorneys' fees and other costs and expenses incurred in defending against such claims against Seller. In no event shall Purchaser be responsible for any severance payment obligations to employees assigned to the Warehouse. Seller shall notify Purchaser in writing promptly following the making of each such payment or the receipt of notice of any claim relating to the making of severance payments, but any failure to so notify Purchaser shall not affect Purchaser's obligations under this Section 6.2(a); except, that, in the event of the initiation of any

judicial or administrative proceeding with respect to any such claim relating to the making of severance payments, Purchaser shall be relieved of its obligations under this Section 6.2(a) with respect to such claim unless Seller shall have provided reasonable notice to Purchaser thereof prior to the date on which Seller's time to formally respond to such claim has elapsed. Notwithstanding the provisions of Section 10.-3(c) hereof, Seller shall have the exclusive right to resolve all claims for severance payments made against it or made jointly against both Seller and Purchaser. In the event Seller shall elect to dispute any such claim made by a former employee of Seller, Seller shall have the right to retain counsel and administer the defense against such claims and any action or proceeding related thereto. Payment by Purchaser for any sums owed to Seller pursuant to this Section 6.2(a) shall be made within thirty (30) days following payment by Seller of such amounts and receipt by Purchaser of Seller's statement therefor.

(b) In the event that during the 6 month period following the Closing a former employee of Seller at the Properties who is either (i) terminated by Seller prior to the Closing, (ii) does not accept Purchaser's offer of continuing employment or (iii) accepts Purchaser's offer of continuing employment but quits or claims nevertheless to have been discharged by Seller as a result of the sale of the Properties to Purchaser shall make a claim against Purchaser for severance payments based upon or arising out of such employee's employment by Seller prior to the Closing, Seller shall reimburse Purchaser for an amount equal to % of any such severance payments that Purchaser is required to pay to such employee and of related attorneys' fees and other costs and expenses incurred in defending against such claims against Purchaser. In no event shall Seller be responsible for any severance payment obligations resulting from the termination by Purchaser of the employment of any employee following the Closing, whether or not such employee shall be a former employee of Seller. Purchaser shall notify Seller in writing promptly following the receipt of notice of each such claim, but any failure to so notify Seller shall not affect Seller's obligations under this Section 6.2(b); except, that, in the event of the initiation of any judicial or administrative proceeding with respect to any such claim relating to the making of severance payments, Seller shall be relieved of its obligations under this Section 6.2(b) with respect to such claim unless Purchaser shall have provided reasonable notice to Seller thereof prior to the date on which Purchaser's time to formally respond to such claim has elapsed. Notwithstanding the provisions of Section 10.3(c) hereof, Purchaser shall have the right to resolve all claims for severance payments made exclusively against it. In the event Purchaser shall elect to dispute any such claim made by a former employee of Seller, Purchaser shall have the right to retain counsel and administer the defense against such claims and any action or proceeding related thereto. Payment by Seller for any sums owed to Purchaser pursuant to this Section 6.2(b) shall be made within thirty (30) days following payment by Purchaser of such amounts and receipt by Seller of Purchaser's statement therefor. In no event shall Seller have any responsibility for or liability in respect of claims made by any former employee of Seller based upon or arising out of such employee's service with Purchaser.

(c) Purchaser and Seller agree to cooperate with all reasonable requests and otherwise assist each other in the investigation and defense of all labor related claims asserted jointly against both Purchaser and Seller. The parties shall each bear their own expenses incurred in any such investigation and defense and, to the extent appropriate, shall share any settlement paid to or other recovery obtained by any employee in an equitable manner.

*Section 6.3. Employees to be Retained by Seller.* Notwithstanding the provisions of Section 6.1 hereof, Seller reserves the right to continue in employment at other operations of Seller those employees listed on Schedule N hereto. Purchaser hereby agrees not to offer to employ any such employees for a period of six (6) months

following the Closing. At Purchaser's request, any such employees retained by Seller shall not be transferred to such other operations for at least thirty (30) days following the Closing Date, during which period Purchaser shall be entitled to utilize the services of such employees in positions comparable to those heretofore held by such employees with Seller. Purchaser shall reimburse Seller for the compensation paid by Seller to such employees during such period (which shall include both salary and fringe benefits).

*Section 6.4. Training of Employees.* Commencing on a date prior to the Closing Date which is mutually acceptable to Seller and Purchaser, Purchaser shall be permitted to conduct training sessions for employees of Seller who serve as sales personnel at the Stores for the purpose of training such employees in the operation of Purchaser's registers and other sales devices. Such training shall be conducted in a manner so as not to unreasonably disturb the operation of the Stores, and Purchaser shall reimburse Seller for all direct costs and expenses of Seller associated therewith, including, without limitation, wages and other compensation paid to employees during such training.