**Emil B. BAIR, Plaintiff–Appellant,**

v.

**GENERAL MOTORS CORPORATION,
Defendant–Appellee.**

No. 89–1105.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 17, 1989.

Decided Feb. 8, 1990.

Joseph C. Bird (argued), Stark, Regan & Finnerty, Troy, Mich., for plaintiff-appellant.

David M. Davis (argued), Gen. Motors Corp., Office of the Gen. Counsel, Detroit, Mich., for defendant-appellee.

Before MERRITT, Chief Judge, and KENNEDY, Circuit Judge, and EDGAR, District Judge.[*]

KENNEDY, Circuit Judge.

Appellant Emil Bair appeals from a judgment of no cause for action in this Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA") suit and from the District Court's grant of appellee's motion to strike appellant's demand for a jury. Appellant sued appellee General Motors Corporation ("GM") under 29 U.S.C. § 1132 (section 502) to recover early retirement benefits, which he claimed GM had contractually agreed to provide. The District Court held that there is no right to a jury in section 502 actions and that appel-

[*] The Honorable R. Allan Edgar, United States District Court for the Eastern District of Tennes-

lant failed to prove the existence of the contract claimed. We agree that appellant was properly denied a jury trial and AFFIRM the District Court's judgment.

Emil Bair worked at GM from 1953 until 1986. In 1986, he was a bonus-eligible executive, which means he was in the top three percent of salaried employees at GM. In 1984, GM began a Special Separation Program ("Program") in which certain employees were offered enhanced retirement benefits for choosing to retire early. The purpose of the Program was to reduce the size of the corporation without resorting to involuntary layoffs. Appellant's supervisor did not inform him of the Program directly, but rather invited employees under his supervision to attend a meeting of the employees of GM's Engineering Organization Department to get information about the Program from its supervisor. Appellant attended the meeting. Mr. Larson, director of the Engineering Organization, conducted the meeting. One of the attendees under his supervision asked Larson who had authority to approve of participation in the Program. He responded that he did, since he was their boss and that they had already been approved. Appellant, however, was not a member of the Engineering Organization and did not work for or under Mr. Larson.

Some time after the meeting, appellant expressed interest in participating in the Program. His supervisor, Thomas McDaniel, began processing the necessary paperwork, part of which was a form entitled "Acceptance of Special Retirement." Appellant was required to sign this form. The form stated near the bottom "[i]mplementation of this special retirement is subject to the necessary approvals."

Mr. McDaniel met with his supervisor, Charles Katko, vice president of Pontiac Truck & Bus and chairman of the Human Resource Committee. Katko did not approve of appellant's participation in the Program. McDaniel relayed this information to appellant, who met with Katko to

see, sitting by designation.

find out why he disapproved. Katko told Bair that he was too valuable an employee for GM to give him an incentive to retire and that GM wanted him to remain.

Appellant decided to retire anyway. Katko subsequently changed his mind and decided to approve of appellant's participation in the Program. McDaniel began preparing the proper forms. Douglas Thomas, a worker in the personnel office, told appellant that the forms had to be sent to GM's main office for final verification of the accuracy of some data contained in them. Three days later, appellant was informed that he was denied participation in the Program because GM's Executive Committee (a committee of the six highest GM officials) decided that appellant should not be given early retirement benefits.

Following his retirement, Bair sued GM under section 502 to receive the early retirement benefits, claiming that signing the Acceptance form created a binding agreement. He demanded a jury trial. The District Court granted GM's motion to strike the jury demand. After the trial, the judge entered judgment for defendant, holding that appellant had not proved the existence of a contract to pay him early retirement benefits.

■ Appellant first argues that the District Court erred in granting appellee's motion to strike appellant's jury demand. Appellant asserts that he was entitled to a jury because the crux of his action involved a contract claim, which is *legal*, rather than *equitable*. We agree with the District Court that appellant was not entitled to a jury.

The District Court relied on *Daniel v. Eaton Corp.*, 839 F.2d 263 (6th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988), in granting the motion. In *Daniel*, this Court stated:

Although there may be actions under ERISA in which a jury trial is proper, in actions for recovery of benefits under section 502 [29 U.S.C. § 1132], "there is no right to a jury trial."

*Id.* at 268 (citation omitted). Appellant concedes that his action is one under section 502. He argues, however, that *Daniel*'s

holding applies only to "normal" section 502 ERISA suits where the dispute concerns a plaintiff's eligibility for benefits under a retirement plan. Appellant frames his action as one of determining whether a contract to participate in the early retirement program exists, not whether he is of the class that is eligible for benefits. Appellant further contends that *Daniel* "preserved the right to a jury trial" for section 502 actions that do not involve the court's equity jurisdiction. We disagree. *Daniel*'s denial of a right to jury was broad, encompassing all "actions for recovery of benefits under section 502." As the District Court noted, "the *Daniel* holding does not provide for exceptions for actions brought under section 502."

Despite the clear, unequivocal language of *Daniel*, appellant maintains that it does not apply to his case because his was a legal action in contract and did not concern his "eligibility" for participation in the early retirement plan. He cites *Stamps v. Michigan Teamsters Joint Council No. 43*, 431 F.Supp. 745 (E.D.Mich.1977) for the proposition that "section 502 must be interpreted as distinguishing between legal and equitable claims.... [S]ubsection (a)(3) clearly and specifically creates a civil action for equitable relief. Subsection (a)(1)(B) creates a different civil action for legal relief." *Id.* at 747. *Stamps* held that actions brought under (a)(1)(B) may be heard by a jury. *Stamps*' holding was noted by this Court in *Crews v. Central States, Southeast and Southwest Areas Pension Fund*, 788 F.2d 332 (6th Cir.1986). *Crews* recognized the conflict between *Stamps*, which allowed a jury for suits at law under section 502, and several other cases from other circuits categorically denying the right to a jury for all section 502 actions. However, the *Crews* Court said these latter cases "have limited applicability in light of the fact that Crews' action is not a traditional ERISA action within the parameters of 29 U.S.C. § 1132." *Id.* at 338. In deciding whether Crews was entitled to a jury, it considered whether the action was legal or equitable. The court ultimately decided that it was an equitable action for restitu-

tion and found no right to a jury. *Id.* Appellant here contends that in *Crews*, this Court approved of the analysis in *Stamps*—i.e., allowing a jury for legal claims under section 502 but not for equitable claims.

We reject appellant's claim that his action is one entitling him to a jury. Appellant argues that contract actions are historically "legal" and that he therefore has a right to a jury. *See Vineyard v. Ford Motor Co.*, 703 F.Supp. 40 (E.D.Mich.1988); *Puz v. Bessemer Cement Co.*, 700 F.Supp. 267 (W.D.Pa.1988); *Turner v. Leesona Corp.*, 673 F.Supp. 67 (D.R.I.1987). Although he frames his action as one at law, it is in fact brought in equity. The legal or equitable nature of an action "is determined by considering, first, the premerger custom with reference to such questions; second, the remedy sought; and, third, the practical abilities and limitations of juries." *United Transp. Union, Local 74 v. Consolidated Rail Corp.*, 881 F.2d 282, 286 (6th Cir.1989) (citation omitted). This Court has noted that "the primary focus in this circuit in analyzing the [legal or equitable] nature of an issue ... is on the second consideration...." *Id.* Most importantly for this appeal, "[i]f a party seeks solely injunctive relief or backpay, the relief sought is equitable and there is no right to a trial by jury." *Id.* Appellant is seeking only instatement in the Program and the payments due him had he initially been granted participation to begin with. Thus, his action is one in equity, not at law. He therefore is not entitled to a jury.

Despite appellant's assertions to the contrary, such a holding is consistent—if not compelled—by *Daniel.* In *Daniel*, the Court noted that the appellant cited section 502(a)(1)(B) in his complaint and "sought to recover from Eaton for breach of contract, *and this was the basis of his demand for a jury.*" *Daniel*, 839 F.2d at 265–66 (emphasis added). It was on these facts, which are similar to those in the instant appeal, that the Court determined that "in actions for recovery of benefits under section 502, 'there is no right to a jury trial.'" *Id.* at 268 (citation omitted). We therefore reject appellant's argument that he is entitled to a jury merely because issues of contract law are involved in his claim.

■ Appellant next asserts that the District Court erred in holding that the form entitled "Acceptance of Special Retirement" did not constitute an enforceable contract. We agree that the form did not amount to a contract. It is hornbook law that an enforceable contract arises upon the acceptance of an offer. An "offer" exists where the offeree can reasonably conclude that, based on the objective facts, an offer has been made. *See Goldman v. Century Ins. Co.*, 354 Mich. 528, 535, 93 N.W.2d 240, 243 (1958). "Acceptance" is "a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." Restatement (Second) of *Contracts* § 50(1) (1979). Although the form signed by appellant is replete with language proclaiming it to be an "offer" and that appellant's signature constitutes "acceptance" of its terms, viewed in context it is clear that its contract-like terms do not, in substance, make it a contract.

The form states that "[i]mplentation of this special retirement is subject to the necessary approvals," indicating that signing the form alone is not sufficient to give rise to an enforceable agreement. In interpreting the same contract, another court concluded that

> an employee may participate in the Program only if [GM] management first decides to permit the employee to participate.... [GM] unambiguously reserves to its management the unfettered right to make the decision as to whether it will offer a given employee the opportunity to participate in the Program.... Thus, [GM] reserves to its management the unfettered right not to agree to permit any particular employee to participate in the Program.

*Valz v. General Motors Corp.*, No. 87–2098C(1) (E.D.Mo. April 25, 1988), *aff'd*, 871 F.2d 1094 (8th Cir.1988) (unpublished opinion). While not binding on our decision, we agree with *Valz's* analysis. The provision in the Acceptance form clearly indicated

that actual participation in the Program could only occur upon receiving the necessary corporate approval. Merely signing the form did not create a contract, since GM reserved the right to deny any particular employee participation.

Appellant also argues that implementation being "subject to the necessary approvals" means that carrying out the specific terms of the Program is subject to further review, but that participation in the program is not. This is necessary, according to appellant, "to make sure the staff reductions were orderly and gave GM time to reorganize." The District Court found that for bonus-eligible employees like appellant, approval by the Executive Committee is required before retirements such as the one sought here are processed. Mr. Katko testified that it is standard policy at GM for the Executive Committee to be involved in retirement decisions for employees like appellant. Moreover, the exhibit marked "GM Approval Chart A," which describes what group has final approval over various employee and personnel changes, shows that for bonus-eligible employees seeking special retirement, approval must come from the Executive Committee. Appellant's signature on the Acceptance form could not, by itself, create an enforceable contract for benefits under the Program. The District Court's finding that reserved the right to deny appellant's participation even after he signed the form is not clearly erroneous.

Appellant objects to the District Court's reliance on extrinsic evidence to interpret what is meant by "necessary approvals" as a violation of the parol evidence rule because the court had found the form to be unambiguous. This objection is inapposite. The evidence went to the question of whether à contract *existed*, not to an interpretation of the contract. *See NAG Enterprises, Inc. v. All State Indus., Inc.,* 407 Mich. 407, 285 N.W.2d 770 (1979). The District Court found that the acceptance form was completed "to give assurance to the Executive Committee, before the Executive Committee acts, that the employee, whose special retirement they are considering, agrees to it." This finding was not clearly erroneous. The District Court did not err in holding that appellant failed to show he was entitled to early retirement.

Accordingly, the judgment of the District Court is AFFIRMED.