OPINION
Plaintiff-Appellants Ronald D. Frazier and Jack G. Barker ("Appellants") brought this action against their employer, Defendant-Appellee Navistar International Transportation Corporation ("Navistar"), claiming breach of contract. On November 5, 1999, the trial court granted summary judgment in favor of Navistar. Appellants appeal this decision raising the following assignment of error:
 The trial court erred to the prejudice of Appellants by granting Appellees' motion for summary judgment.
Appellants incorporate the following four issues for review into this assignment of error:
 The appellate court reviews the trial court's grant of summary judgment de novo.
 The trial court incorrectly held that a reasonable jury could not determine that the "application form" constituted a contract.
 There are material issues of fact with regard to Navistar's conduct which gave rise to a contract.
 There are material issues of fact with regard to the "Participating Conditions" enumerated in the Defendant's "Application Form."
The facts of this case are as follows. On May 15, 1996, Larry Clement, the Navistar Springfield Assembly Plant Manager, issued a letter to all "A/P Non-Represented Employees." In this letter, Clement explained that due to declining market conditions, the company would be decreasing production and as a result, would need to reduce staff. Navistar's goal was "to accomplish these staffing reductions through a voluntary retirement incentive program which will be offered in conjunction with a restructuring of our current organization." However, a possibility of involuntary separations was also mentioned. Further, the letter explained the eligibility requirements for the program and advised that complete details would be explained at a later date.
Also on May 15, 1996, employees at the Springfield plant received a letter from Howard Osborne, the Manager of Human Resources. The first sentence of the letter stated:
 We are writing this letter to you in order to acquaint you with the terms and conditions of a Voluntary Retirement Incentive Offer for non-represented employees that is being made available to you and other eligible employees assigned to the Assembly Plant.
This letter explained that the company intended to limit the opportunity to forty employees, but they would "design the program to allow maximum flexibility in achieving/expanding the number of participants provided such action does not disrupt our ability to operate the business." Further, the letter provided:
 In the event that more employees request this opportunity than the business requirements permit or should the number of eligible employees severely impact a segment of the business, the number of employees allowed to participate will be restricted.
Finally, at approximately the same time these letters were distributed to eligible employees, an application form for the Voluntary Retirement Program was also distributed. This form contained a box asking employees to check Option A if they did not wish to participate in the program, or Option B if they did wish to apply for the program. Option B further stated: "[I] agree that my participation is voluntary and that I would, if eligibleto participate, retire effective 7/1/96 subject to the conditions outlined below without any further contact by the Company." (Emphasis added). Immediately following this box, the form listed eleven "Participating Conditions." The parties have specifically referred to three of these conditions as relevant to the appeal:
 5. The maximum number that will be permitted to retire under this Special Voluntary Retirement Program is 40.
 6. The maximum number that will be permitted to retire under this program from any one department or work area may be limited to the number of positions the Company plans to reduce in that department or work area.
* * *
 11. Eligible employees who make timely application are subject to the Participating Conditions outlined above and are not guaranteed participation in this program. The Company, based on business necessity, reserves the right to make the final decision as to individual employee participation.
(Emphasis added). Following this list of participating conditions, the application stated: "Employees permitted toparticipate in this program will be notified by the Company notlater than Friday, June 7, 1996." (Emphasis in original). The end of the document provided a space for the applicant's signature as well as a signature line for a company representative to approve the application.
At the time employees were notified of the voluntary retirement program, both Appellants worked in the Customer Responsiveness Center ("CRC") located at the Springfield Navistar Plant. Both submitted appropriately signed applications in which they marked Option B, indicating their desire to participate in the program. Neither of these applications were signed by a representative of Navistar approving the application.
On June 3, 1996, the CRC department held a meeting to discuss a succession plan to replace the five employees who had expressed an interest in the retirement program. During this meeting, the manager of CRC, Ann Wiseman, indicated that "everything looked good for the five folks" that wanted to participate in the program. Also during this period of time, employees from other departments had arrived in CRC to cross-train on the positions of some of the individuals interested in retiring.
On June 6, 1996, Ann Wiseman advised Barker that she was not permitting anyone in the department to participate in the retirement program. She explained that she was unable to transfer in from another department two employees that she preferred as replacements, so instead of choosing which of the five could participate in the program, she was allowing no one to participate.
 I
In their first issue for review, Appellants argue that our standard of review for a summary judgment decision is de novo. We agree. See, Nilavar v. Osborn (1998), 127 Ohio App.3d 1, 10, citing Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. In reviewing a summary judgment decision, the appellate court must apply the standard found in Civ. R. 56, the same as a trial court. According to Civ. R. 56, a trial court should grant summary judgment only when the following tripartite test has been satisfied: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66.
Despite the phrasing of Appellant's third and fourth issues for review, the parties do not appear to dispute the material facts in this case. Instead, the parties dispute whether or not the facts give rise to a legal contract. In this regard, whether or not a contract exists is a mixed question of law and fact.Rudd v. Online Resources, Inc. (June 18, 1999), Montgomery App. No. 17500, unreported, p. 4, citing McSweeney v. Jackson (1996),117 Ohio App.3d 623, 632. Such a mixed question can be decided on summary judgment if after considering the facts, reasonable minds could only come to one conclusion which is adverse to the non-moving party. Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38,41.
 II
Appellants argue in their second issue for review that the trial court erred in finding that the documents involved did not constitute a valid offer which Appellants accepted by signing and returning the application. The documents Appellants refer to are the letters from Larry Clement and Howard Osborne, and the application form for the retirement program.
In order for a contract to exist, there must first be a meeting of the minds, which generally includes an offer and acceptance. Garrison v. Daytonian Hotel (1995), 105 Ohio App.3d 322,325, citing Noroski v. Fallet (1982), 2 Ohio St.3d 77, 79. Although no particular form is required, an offer is defined as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Id., quoting 1 Restatement of the Law 2d, Contracts (1981) 71, Section 24. The Restatement further clarifies the existence of an offer by stating that, "[a] manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of intent." Gruenspan v. Seitz (1997), 124 Ohio App.3d 197, 211, quoting Restatement of the Law 2d, Contracts (1981) 75, Section 26. In other words, a contract does not exist if both parties anticipate that something remains to be done to complete the bargain. Rudd, supra, at p. 6. See, also, 1 Corbin, Contracts (Perillo Rev. 1993) 30-31, Section 1.11.
The Sixth Circuit addressed very similar facts to the present case in Bair v. General Motors Corp. (C.A.6, 1990), 895 F.2d 1094. In Bair, General Motors ("GM") introduced an opportunity for employees to participate in an early retirement program. Id. at 1095. Soon after, Bair expressed an interest in the program to his supervisor and was provided with a form entitled "Acceptance of Special Retirement." This form contained a statement that "[i]mplementation of this special retirement is subject to the necessary approvals." Id. Bair signed and submitted the form, but was denied participation in the program. The court held that the form did not constitute an enforceable contract because the statement indicating further approvals were necessary reserved GM's right to deny any employee's access to the program. Id. at 1097. In support of this conclusion, the court cited another court's interpretation of the same contract:
 an employee may participate in the Program only if [GM] management first decides to permit the employee to participate. . . . [GM] unambiguously reserves to its management the unfettered right to make the decision as to whether it will offer a given employee the opportunity to participate in the Program. . . . Thus, [GM] reserves to its management the unfettered right not to agree to permit any particular employee to participate in the Program.
Id., quoting Valz v. General Motors Corp. (E.D.Mo. April 25, 1988), No. 87-2098C(1), aff'd, 871 F.2d 1094 (8th Cir. 1988), unreported.
In the present case, Appellants argue that the combination of the letters and the application was sufficient to constitute an offer to participate in the retirement program that could be accepted by their completion of the application. However, the Osborne letter and the application unambiguously indicated that Navistar reserved the right to limit the number of participants in the program. Further, Participating Condition number eleven expressly stated that applicants were not guaranteed participation in the program. Finally, the application contained an underlined statement just above Appellants' signatures that: "Employeespermitted to participate in this program will be notified by thecompany not later than Friday, June 7, 1996." Similar to Bair, these statements unambiguously communicated that Navistar did not intend to conclude any bargain until they received the applications and made further determinations as to which employees would be accepted. Thus, Appellants had reason to know that the bargain would not be complete until Navistar accepted the application.
Considering these unambiguous statements, we find that a reasonable person could only conclude that Navistar did not intend to complete the bargain until they manifested the further intent to accept the individual into the program. Consequently, the letters and application did not constitute a valid offer by Navistar. Based on the foregoing, we find Appellants' second issue for review has no merit.
 III
As an alternative argument, Appellants claim that the Clement and Osborne letters and the application constituted an invitation for Appellants to make a valid offer, which was made when Appellants completed the application. Further, Appellants allege that Navistar accepted this offer through a combination of cross-training employees for the eligible retirees' positions, and a statement by Ann Wiseman that "everything looked good for the five folks" who wished to participate in the program.
We agree with Appellants that their completion of the application could constitute an offer to enter into a contract. Their signature on the application manifested a clear intent to enter into the bargain, realizing that Navistar's assent would conclude it. The question then becomes whether or not Navistar accepted Appellants' offer.
Acceptance of an offer is defined as "a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." 1 Restatement of the Law 2d, Contracts (1981) 128, Section 50 (1). The Restatement further defines two types of acceptance:
 (2) Acceptance by performance requires that at least part of what the offer requests be performed or tendered and includes acceptance by a performance which operates as a return promise.
 (3) Acceptance by a promise requires that the offeree complete every act essential to the making of the promise.
Id. Appellants have alleged acceptance occurred through the action of cross-training individuals for the potential retirees' positions and a statement made by the supervisor. In order for these events to constitute an acceptance of the offer, they must somehow fall under acceptance by performance or acceptance by promise.
The Comments to the Restatement provide that acceptance by performance requires at least the beginning of performance of the act requested. 1 Restatement of the Law 2d, Contracts (1981) 128, Section 50, cmt (b). Mere preparation to perform is not sufficient to constitute acceptance. Id. In their "offer," Appellants requested the "act" of Navistar allowing them to participate in the early retirement program. The offer did not request the "act" of cross-training employees from other departments to replace any potential retirees. In fact, the program was offered for the purpose of downsizing, so Appellants may not have been aware at the time they made their offer whether their positions would be filled by others or eliminated. In any event, the "act" of cross-training employees from other departments can at most be classified as preparation to perform in response to Appellants' offer. Navistar did not actually perform any part of the act requested by the offer, which was allowing Appellants to participate in the program. Consequently, there was no acceptance by performance.
The other possibility for acceptance is by promise. In this regard, Appellants' allegation that Ann Wiseman's statement constituted an acceptance presumably suggests an acceptance by promise. Promise is defined as "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." 1 Restatement of the Law 2d, Contracts (1981) 8, Section 2. Corbin more specifically defines promise as follows:
 an expression of commitment to act in a specified way, or to bring about a specified result in the future, or to take responsibility that the result has occurred or will occur, communicated in such a way that the addressee of the expression may justly expect performance and may reasonably rely thereon.
1 Corbin, Contracts (Rev.Ed. 1993) 35, Section 1.13. Further, a promise must be distinguished from an expression of opinion, which can be accomplished "by inquiring whether a reasonable person in the position of the [alleged promisee] would conclude whether the [alleged promisor] made a promise or merely stated an opinion."Id. at 45, Section 1.15. In some cases, this conclusion is so clear that it can be a question of law for the court. Id.
In the present case, we must determine if a reasonable person could conclude that the statement "everything looked good for the five folks" constituted a promise. We find the statement is clearly an expression of Ann Wiseman's opinion. The statement does not make any commitment to act, to bring about any result or to take responsibility for bringing about any result. As a matter of fact, it could not possibly be considered a commitment at all. It is Ann Wiseman's opinion of the possibility that these individuals would be accepted into the program. We find that a reasonable person could not conclude that the statement constituted a promise.
Based on the foregoing, we agree that submission of the application constituted an offer; however Navistar did not accept the offer, and thus, no contract was formed. Accordingly, Appellants' third issue for review is without merit.
 IV
Finally, Appellants argue that there were material questions of fact as to several of the participating conditions listed on the application. It is not entirely clear to this court what the Appellants are alleging in this assignment of error. In their brief, they discuss three of the participating conditions and allege one has not been met, one grants discretion to the company, and the other limits the discretion of the company. We can only assume that Appellants are attempting to demonstrate ambiguity in the application, which they allege is a contract. However, we have already determined that the application is not a contract, so these arguments are inapposite. See Bair v. General Motors Corp.,895 F.2d at 1098. Nonetheless, we will consider each participating condition addressed by Appellants to ensure they support our outcome on the previous issues.
First, participating condition number five states that Navistar will limit participation in the program to forty employees. Appellants allege this condition conflicts with both a statement by Howard Osborne that the company would attempt to design the program to allow more participants, and the fact that there were ultimately forty-two participants. These conflicts are irrelevant. The significance of the fifth participating condition is that Navistar was alerting applicants that participation could be limited by the company. Whether the number of participants was ultimately forty or forty-two does not affect the point that Navistar reserved the right to limit participation. This reservation of the right to limit participation indicated that some further processing and decision-making was required by Navistar before any contract was formed.
The same reasoning applies to Appellants' argument regarding participating condition number six. This condition provides that the number of participants from any particular work area may be limited by the company. Again, the mere fact that the company reserves the discretion to limit participation indicates that simply completing the application does not form a contract.
Finally, participating condition number eleven explicitly reserves the right of the company to make a final decision as to individual employee participation. It also clearly states that applicants are not guaranteed participation in the program. However, Appellants focus on the language "based on business necessity." Regardless of whether Navistar's decision to allow or disallow participation must be based on business necessity, it still reserves the right to make that final decision. Thus, no contract can be formed until that decision is made and the application is approved by the company. Appellants' applications were never approved by the company.
Based on the foregoing, we agree with the trial court that no reasonable person could conclude that a contract was formed, and therefore, Appellants' sole assignment of error is overruled.
Judgment affirmed.
 ______________________________ BROGAN, Judge
GRADY, P.J., and WOLFF, J., concur.